EDWARD T. FLOYD, complainant-respondent,

*v.*

ELLEN J. FLOYD, defendant-appellant.

[Submitted November term, 1923. Decided April 4th, 1924.]

1. Where a suitor comes into this state and attempts to enforce a judgment obtained in a foreign state, the defendant may challenge the validity of such judgment upon the ground of fraud or lack of jurisdiction of the foreign tribunal which rendered the judgment, but the validity of a judgment of the courts of a sister state cannot be attacked in the courts of this state in a direct proceeding.

2. If such proceeding were permissible, it is only available to one who has a legal status in this state, and where both parties to the suit are domiciled in a sister state, there is no *res* in this state that could be properly dealt with.

3. The domicile of a wife is merged in that of her husband unless she acquire a separate domicile elsewhere, by her husband's consent, or where he abandoned her or conducts himself in such a manner as would constitute in law a matrimonial offense and justify her in leaving him.

4. Where the matrimonial domicile of husband and wife are in a sister state, it cannot properly be said that the defendant perpetrated a fraud upon the courts of this state by obtaining a divorce in another state, and by coming to this state after obtaining her divorce impressed *ex post facto* upon her alleged conduct a design to commit a fraud upon the courts of this state.

On appeal from a decree advised by Vice-Chancellor Ingersoll.

*Messrs. Bourgeois & Coulomb,* for the appellant.

*Messrs. Cole & Cole (Mr. Clarence L. Cole* of counsel), for the respondent.

The opinion of the court was delivered by

KALISCH, J.

This is an appeal from an order advised by Vice-Chancellor Ingersoll, refusing defendant's motion to strike out the bill of complaint and to quash the writ of subpœna.

The bill was filed by the complainant against the defendant, to the end that a certain decree of divorce obtained by her in the State of Nevada against the complainant be decreed by the court of chancery to have been fraudulently procured by her "and that the decree may be declared null and void and of no effect, and that she may be perpetually enjoined and restrained from setting up the decree or making use of the same in any manner or matter in this or in any other jurisdiction to defeat or affect the marital rights of complainant, and that she be further commanded to present the truth of the matters alleged and shown in the bill of complaint to the district court of the State of Nevada, county of Washoe, and in good faith to urge the said district court to set aside its aforesaid decree of divorce."

The bill of complaint avers that the complainant and defendant intermarried at the town of Eastville, in the State of Virginia; that the complainant is a resident of Philadelphia, in the State of Pennsylvania, and that he and his wife lived together, whether at Eastville or Philadelphia does not appear, up to January 9th, 1921, on which date she left her husband and went to the city of Reno, in the State of Nevada, for the purpose of obtaining residence there, whereon to base her application for a divorce from complainant. That on the 3d day of September, 1921, she filed her petition for divorce in the Nevada court, alleging as grounds therefor that her husband had refused to provide the common necessaries for her, when such neglect was not the result of poverty.

That on October 24th, 1921, she was granted a final decree and the custody of their minor child. That immediately after the decree she "returned east and settled and took up her residence in the State of New Jersey, at Atlantic City, where she now resides"

"That it was never the intention of the defendant to live in the State of Nevada, nor was her residence in said State of Nevada for any other purpose than to perpetrate a fraud on her husband and on the courts of this state," &c.

The many grounds of appeal set forth and relied on by appellant's counsel for a reversal of the decretal order may be conveniently summed up under two heads:

1. The court below was without jurisdiction to entertain the suit because the complainant is a resident of and domiciled in the State of Pennsylvania, and that both complainant and defendant were residents of and domiciled in the State of Pennsylvania at the time the defendant left complainant and went to the State of Nevada.

2. That the facts set out in the bill of complaint do not afford a legal basis for the interposition of a court of equity.

We have reached the conclusion that the complainant has no legal status in this state to attack the validity of the judgment of a court of the State of Nevada in a direct proceeding, and that, therefore, his bill of complaint should have been dismissed.

For it is quite plain what the complainant seeks by his bill is a review of the validity of a judgment of a court of general jurisdiction of the State of Nevada by our court of chancery in a direct proceeding instituted for that special purpose. But even if it be conceded that such a course of procedure was permissible, nevertheless, it is quite apparent that it is only available to one who has a legal status, which the complainant obviously did not have, since the domicile of both husband and wife was in the State of Pennsylvania and there was no *res* in this state which could be properly dealt with by the court of chancery.

Did the complainant have a legal *status* in this state? The statements in his bill of complaint answer this *quæry* in the negative. According to his averments he and his wife were domiciled in the State of Pennsylvania and she left him against his consent and was guilty of wrongful conduct.

Under the decisions of this state it is held that the domicile of the wife is merged into that of the husband and continues during coverture unless the wife acquires a separate domicile elsewhere, by her husband's consent, or where he abandons her or conducts himself in such a manner as would constitute in law a matrimonial offense and justify her in

leaving him. *Rinaldi* v. *Rinaldi,* *94 N. J. Eq. 14,* in which case Chancellor Walker has collated the cases decided by the court of chancery and by this court, dealing with the question to the effect, as stated.

It is therefore clear that the matrimonial domicile, according to complainant's averments in his bill, is in the State of Pennsylvania.

It is hardly necessary, in view of the complainant's statements in his bill, to inquire into the question whether there was a *res* in this state of which a court of equity could properly take hold, for the bill does not disclose any, and reliance for the successful prosecution of the suit is based upon the simple fact that the defendant was residing in Atlantic City and was served with process there, and that in leaving her husband and going to the State of Nevada and obtaining a divorce there, under the circumstances narrated in the bill, she perpetrated a fraud upon the complainant and courts of this state.

How can it be properly said, in view of the fact that the matrimonial domicile of the parties, so far as the facts of this case disclose, is in the State of Pennsylvania, that a fraud was perpetrated by the defendant upon the courts of this state, is inconceivable in sound reason. In order to so hold we would be required to adopt the theory that because the defendant, after obtaining her divorce in Nevada, came to this state, where she was residing at the time she was served with process, impressed *ex post facto* upon her alleged conduct a design to commit a fraud upon the courts of this state. If this can be fairly said to be the legal affect of her coming into this state, then there is no good reason why the like situation should not exist in each of the remaining forty-seven sister states, to which the defendant may resort temporarily or otherwise, so long as process can be served upon her. Pursuing this thought to a logical sequence there would be no obstacle in the complainant's way, if he were defeated here to repeat his effort in a sister state, and if defeated there to go to another state, and so on until he had exhausted the category of states where he was successful in having the

defendant served with process. This is a burden which our courts are unwilling to assume upon the ground that such a procedure is against public policy. We are only concerned in passing upon the validity of a judgment of a sister state where an attempt is made to enforce such judgment in this state; and when the validity of such judgment is attacked upon the ground of fraud or want of jurisdiction of the foreign forum over the subject-matter or of the person.

But to entertain a suit of the character, as here, would have a pernicious tendency to convert this state into a mecca for disgruntled divorcees.

Although the present suit does not seek a dissolution or an annulment of the marriage contract, nevertheless it is quite manifest whatever result the court below reached it would affect the marital relation which never was here but existed in the State of Pennsylvania at the time the defendant obtained her decree and where the complainant still resides.

There can be no debatable question concerning the right of a suitor to come into this state and attempt to enforce a judgment obtained in a foreign state, and likewise the right of a defendant to challenge the validity of such judgment upon the ground of fraud or lack of jurisdiction of the foreign tribunal which rendered the judgment.

What was said by Vice-Chancellor Van Fleet, in *Doughty* v. *Doughty, 27 N. J. Eq. 315* (at *p. 318*), is pertinent here.

"And the power of the court to relieve against fraudulent judgments is not limited to judgments, recovered in the courts of the same state, but may be exerted against judgments recovered in the courts of other states, whenever they are sought to be made the foundation of an action or defense." *Royal Arcanum* v. *Carley, 52 N. J. Eq. 642.*

In the cited case the complainant filed her bill against her husband for a divorce for desertion and adultery, and by the same bill prayed that a decree obtained by him in the State of Illinois, be avoided upon the ground—*first,* that the court did not acquire jurisdiction over the cause, and *second,* that the decree was obtained by fraud. The facts disclosed

that the parties were married and lived in this state. There was no question but what the matrimonial domicile of the parties was in this state before and at the time the suit was instituted by the wife. The case on appeal to this court was affirmed in *28 N. J. Eq. 581.*

The case of *Carris* v. *Carris, 24 N. J. Eq. 516,* relied on in respondent's brief to sustain the bill of complaint, has no such tendency. In that case the complainant, a resident of Newark, filed his bill to annul his marriage with the defendant on the ground of fraud. Both he and his wife lived together in Newark, where she gave birth to a child. The matrimonial domicile of the couple was in this state. She left her husband and went to the city of New York and took up her residence there, where she was served with process, according to statutory requirement in the case of an absent defendant.

The distinguishing features of that case from the present one are too palpable to need any comment.

The case of *Magowan* v. *Magowan, 57 N. J. Eq. 322,* lends no support to respondent's contention, for in that case Chief-Justice Gummere, speaking for this court, points out that the bill filed by the wife against her husband was for maintenance and as antecedent to the primary relief prayed for she sought to have declared void a decree of divorce rendered by a court in Oklahoma, in a suit brought by her husband. In that case it clearly appeared that the matrimonial domicile of the parties was in this state, and that they were both residing in the city of Trenton at the time the suit was instituted by her.

A case which tends to illustrate the fallacy of respondent's contention that he is clothed with the proper legal status to file the present bill is *Fairchild* v. *Fairchild, 53 N. J. Eq. 678,* decided by this court, where it apeared that the wife had filed a bill for maintenance against her husband in our court of chancery, her husband presumably living at the time in the State of Kansas, and had a decree *pro confesso.*

The husband while the maintenance suit was pending against him filed a bill for divorce against his wife, in a

court in the State of Kansas having jurisdiction of divorce cases, to which suit the wife filed an answer and made defense, but was unsuccessful in establishing it. The wife had always been a resident of this state, and the husband came here and applied to the court of chancery to open the decree *pro confesso* which had been entered against him in the maintenance suit, and for leave to file an answer setting up the decree of divorce obtained by him in Kansas, as a bar to the wife's right to a decree, which application was granted.

The husband having submitted himself to the jurisdiction of the court by his answer to the wife's bill of complaint properly presented the issue whether or not the decree obtained by him against his wife in the State of Kansas was valid, and if so was a bar to the maintenance suit, and this court held that it was. Here was a *res* of which the court of chancery could take hold of, but no such situation exists here, as has already been pointed out.

It may be fairly presumed that a court of a sister state, from who a decree has been obtained by fraud, will, in the exercise of its inherent power to protect the integrity of its judicial procedure and action, and clothed with full control over its own judgments and decrees, afford relief to an aggrieved party who applies to it upon a proper showing that a judgment or decree was obtained by fraud, by opening such judgment or decree and permit a defense to be made to the action.

The views herein expressed result in the conclusion that the decretal order of the court below is reversed, with costs, with the further direction that the bill be dismissed, with costs.

*For affirmance*—TRENCHARD, PARKER—2.

*For reversal*—THE CHIEF-JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, CLARK—9.