LINWOOD JUDD WEBB, petitioner,

*v.*

MILDRED GERALDINE WEBB, defendant.

[Decided August 6th, 1934.]

*Mr. Vincent A. deBenedetto,* for the petitioner.

ROGERS, A. M.

This is a suit for divorce commenced in March, 1934. The husband charges in his petition that he is a resident of the State of New York, that he was married to the defendant in

this state in June, 1922, that she deserted him in April, 1926, and that the defendant has been a *bona fide* resident of this state ever since that cause of action arose down to the commencement of this suit. The defendant was personally served with process within this state, failed to answer, and the cause came on for hearing *ex parte.* A continuance was granted to permit the taking of further testimony to better corroborate the defendant's alleged residence in this state.

It appears that, after the marriage, the parties resided in this state until the commencement of the alleged desertion. In April, 1926, the husband prepared a new home for his wife at Greenport in the State of New York, where he then went to live and has ever since resided. The wife, without legal justification, then refused to accompany him, and has ever since resisted his diligent efforts to resume marital relations. It seems that she preferred to remain in the locality in this state in which she had lived before marriage, where they had also cohabited after the marriage until the husband changed his domicile to New York to be nearby his new place of employment.

At the time the continuance was granted referred to above, I intimated to counsel my doubt that this court had jurisdiction over the subject-matter of this suit. Petitioner's case proceeds upon the theory that the residential qualifications for jurisdiction prescribed by our statute are fully met, by the fact that the defendant has continued to be a resident of this state ever since she deserted her husband in April, 1926. Inasmuch as my judgment on that proposition is dispositive of the case, it will be needless to proceed further with the hearing. It may be assumed that the wife's alleged residence, in fact, can be fully established.

In legal contemplation upon marriage, the wife's domicile merges with and becomes that of her husband. It continues thereafter within her husband's properly exercised control, and it is unchangeable by her except by his acquiescence or consent, or for such misconduct on his part inimical to the union, as justifies her in selecting another. *Thompson* v. *Thompson, 89 N. J. Eq. 70; 103 Atl. Rep. 856; Rinaldi* v. *Rinaldi, 94 N. J. Eq. 14; 118 Atl. Rep. 685;* approved in

*Floyd* v. *Floyd, 95 N. J. Eq. 611; 124 Atl. Rep. 525; Pennello* v. *Pennello, 97 N. J. Eq. 421; 128 Atl. Rep. 596.*

When the husband in 1926 removed from this state to New York and his wife, without warrant in law, refused to accompany him and cohabit there, her domicile, nevertheless, thereafter became that of her husband and continued to be such. And that is so despite the fact that she may have continued to reside in this state. He changed the matrimonial domicile lawfully to New York and she simply refused physically to accompany him. His act did not constitute misconduct on his part, nor justification for his wife then to select a separate residence in the sense of domicile. It cannot be said that she has maintained a separate domicile in this state with her husband's acquiescence or consent, for that would not only be contrary to the fact but dispositive of one of the essential elements of the alleged cause of action—obstinacy of the desertion. Such is the reasoning in *Atherton* v. *Atherton, 181 U. S. 155.*

It is urged that, though the complaining husband is a non-resident, this court has jurisdiction under section 6, subdivision (a) of our Divorce act of 1907 for the reason that personal service of process was made upon the guilty party within this state, and the latter has continued to reside here ever since the parties separated. That section of the statute does provide for jurisdiction based upon the residence of either party in this state where such service is made. But the quality of the prescribed residence must always be determined in light of the law defining residence of married persons, and the limitations and privileges pertaining thereto. To hold otherwise would give this court authority to alter the marital status in any case where personal service of process was made within this jurisdiction and in which one of the parties had resided here with *bona fides* the prescribed length of time regardless of whether this state was the *situs* of the marital *res* or status by virtue of such residence. That cannot be so. A suit for divorce necessarily involves the marital status. It is not strictly a personal action. *Biddle on New Jersey Divorce Law (2d ed.) 32.* In *Thompson* v. *Thompson, supra,* Vice-Chancellor Backes dealt with the New

York decree in a prior suit, refused to accord it recognition, and granted the husband a decree for divorce finding that the matrimonial status was in this state, and that our courts were in nowise bound by the New York judgment where the wife had evidently endeavored to establish a separate residence from her husband without legal justification. It is unnecessary to cite the many cases which thus deal with the efficacy of decrees gotten in sister states in so far as concerns the rights of citizens of our state where the matrimonial *res* has remained here. It is sufficient to say that I am not aware of any case in which our courts have recognized a decree of a court of a sister state altering the marital status where the complete matrimonial *res* has continued to remain in this jurisdiction. The situation, of course, is somewhat different where the parties have, in legal contemplation, acquired separate domiciles, and the *res* is in part found to be in another jurisdiction as well as here. If our courts have thus dealt vigorously with such judgments of the courts of our jurisdictions, it is certainly logical, and quite essential, that the same rule of residence controlling the matrimonial status be applied to causes instituted in the first instance in our court relating to this status. It is to be concluded, therefore, that the quality of residence required by our statute is that which carries with it the complete *res,* or a part of it. The principle is elementary and fundamental.

If I had found the law in this state permitted a married woman at will to carry with her a part of the marital *res* when, independently from her husband, she determined upon establishing a residence separate from his, undoubtedly the husband here would be entitled to relief. It would then appear that, after the separation, the wife's residence continued in this state in all respects satisfied the jurisdictional requirements of paragraph 6, clause (a) of the Divorce act of 1907. There certainly seems to be no good reason that the law in such case should not be such in light of the modern policy tending to constantly broaden the rights of married women. But that must be the subject of legislative enactment, not judicial determination. It may be noted that *P. L. 1927 ch. 168; Cum. Supp. Comp. Stat. 1930 § 124-19,*

provides that, for the purpose of voting, office holding, &c., the domicile of married women should be determined by the same facts and law as that of any other person. However, the legislature has not yet extended to a married woman, in respect to the marital domicile, like control of her residence free from the properly exercised authority of her husband.

I do not perceive that there are any distinctions of facts in the case *sub judice* from those in *Pennello* v. *Pennello, supra,* and *Rinaldi* v. *Rinaldi, supra,* which would warrant not applying here the jurisdictional principle decided in those cases. It is true that they were suits for nullity of marriage. The quality of residence required for jurisdiction in nullity suits cannot be differentiated from that required in suits for divorce under our statute. The statute simply prescribes a different period or term of residence. The controlling feature of either of these types of suits in respect to the quality of residence prescribed is that they each alter the marital status.

Nor is there any distinction to be found in the fact that in each of the last cited cases the petitioner had come into this state and acquired a residence, and that the defendant was a non-resident who had remained at the matrimonial domicile, and was brought into this court as an absent defendant pursuant to the provisions of our Divorce act. It was decided in those cases, as here, that the petitioner-wife could not acquire a separate matrimonial domicile within this state for the purpose of giving jurisdiction under our statute, except with the acquiesence or consent of the husband, or because of such misconduct on his part as justified her in maintaining such a separate residence. The same factors controlling the ability of a wife to acquire a separate matrimonial domicile from her husband are present in this case, and it is equally evident in this case that she has not had such a separate domicile within this state at any time since the separation by virtue of which this court would have any jurisdiction to decree relief for the petitioner upon the alleged desertion. Petition will be dismissed.